**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**
**PITTSBURGH DIVISION**

| | |
|---|---|
| AMY BUMBARGER, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CASE NO. 2:15-cv-00993-TFM** |
| | ) |
| COMENITY BANK, | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT COMENITY BANK'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND TO DISMISS PLAINTIFF'S CLAIMS**

**COMES NOW** defendant Comenity Bank ("Comenity" or "Defendant"), by and through its undersigned counsel, and pursuant to Sections 2, 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, hereby submits this memorandum in support of its Motion to Compel Arbitration and Dismiss the claims of plaintiff Amy Bumbarger ("Bumbarger" or "Plaintiff"). In support thereof, Comenity states as follows:

## I. FACTUAL BACKGROUND

### A. PLAINTIFF OPENS A CREDIT CARD ACCOUNT AND AGREES TO ARBITRATION.

On March 9, 2013, Plaintiff accepted a pre-approved offer for a Victoria's Secret credit card account issued by Comenity Bank. (*See* Declaration of Andrea Dent (hereinafter, "Dent Dec."), attached hereto as Exhibit A, ¶ 6.) Plaintiff accepted the offer via the internet, by providing certain personal information. (*Id.*, ¶ 6.) In order to accept the offer and use the card, Bumbarger was presented with a Agreement (the "Agreement") governing her use of the card and consented to the terms of the Agreement. (*Id.*, ¶ 6; Exhibit 1 to Dent Dec).

The Agreement states "You agree to the terms of this Agreement, and promise to do everything required of you. If you sign or submit an application to obtain credit from us, you'll

be legally bound by this Agreement.  You're also legally bound if you sign a charge slip, or permit someone else to use the credit provided."  (Agreement, p. 1, Ex. 1 to Dent Dec.).

The Agreement contains an arbitration provision (the "Arbitration Provision").  (*See* Dent Dec., ¶ 10; Agreement, Ex. 1 to Dent Dec.)  The Arbitration Provision is refernced in the very first paragraph of the Agreement, which states as follows:

> **Section I of this agreement also includes a Jury Trial Waiver and an Arbitration provision in the event of a dispute.**
> - **You have a right to reject this Arbitration provision.**
> - **If you do not reject this Arbitration provision, it will be part of this agreement and will:**
>   - **Eliminate your right to a trial by jury; and**
>   - **Substantially affect your rights, including your right to bring, join in or participate in class proceedings.**

(Agreement, Ex. 1 to Dent Dec., p. 1) (emphasis and capitalization in original).  The Arbitration Provision, in turn, states in pertinent part as follows:

> **C. Arbitration Provision**
>
> **READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**
>
> \*\*\*
>
> **6. Court and Jury Trials Prohibited; Other Limitations on Legal Rights: IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.**

(Agreement, Ex. 1 to Dent Dec., p. 1) (emphasis and capitalization in original).

The Arbitration Provision covers, *inter alia*, "any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account" and "includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, state, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief)." (*Id.*, p. 2) The Arbitration Provision states that it "involves interstate commerce and is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), and not by any state arbitration law." (*Id.*)

The Arbitration Provision specified how Plaintiff could opt-out of arbitration, stating as follows:

> **1. Your Right to Reject: If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at Comenity Bank, PO Box 182422, Columbus, OH 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.**

(*Id.*) (emphasis in original). Plaintiff did not exercise her right to opt-out of the arbitration provision. (*See* Dent Dec. ¶ 11.)

Plaintiff used the Account by making purchases with the credit card. (*See* Dent Dec. ¶ 8.) To obtain purchase authorization for her in-store purchases, Plaintiff "swiped" her card at the place of purchase, the data was transmitted electronically to a computer server located outside of Pennsylvania, and her purchase was approved. (*See id.*) Plaintiff last made a purchase on her Account on January 26, 2015 and last made a payment on May 9, 2015. (*Id.* ¶ 9.)

B.   **PLAINTIFF SUES COMENITY BASED ON COMMUNICATIONS REGARDING THE ACCOUNT.**

Rather than submit her dispute with Comenity to arbitration, as was called for in the Agreement, Plaintiff initiated this action by filing a complaint (the "Complaint") against Comenity in this Court on July 30, 2015. [*See generally* Complaint, Doc. 1.] The Complaint alleges that Comenity called Plaintiff on her cellular telephone, beginning in February 2015, using "an automatic telephone dialing system and/or artificial or pre-recorded messages" in violation of the federal Telephone Consumer Protection Act ("TCPA"). [*Id.*] Plaintiff seeks actual and statutory damages under the TCPA as well as injunctive relief. [*Id.*, p. 5.] The Complaint also demands a jury trial. [*Id.*]

## II. ARGUMENT

Under the facts set forth above, federal and state law mandate enforcement of the Arbitration Provision. For the following reasons, all of Plaintiff's claims against Comenity must be submitted to arbitration.

A.   **ARBITRATION AGREEMENTS ARE PRESUMPTIVELY VALID.**

The FAA establishes that an arbitration agreement "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Congress enacted the FAA to overcome long-standing judicial hostility toward pre-dispute arbitration agreements, and, in doing so, placed arbitration agreements "upon the same footing as other contracts." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 225-26 (1987); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995).

Congress, through its passage of the FAA, and the Supreme Court, through its interpretation of the Act, have created a strong federal policy favoring the enforcement of arbitration agreements. Indeed, these policies are so strong that, "as a matter of federal law, any

doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007). It is against this backdrop of the strong federal policy of encouraging arbitration that the Court must evaluate the merits of Comenity's motion.

### B.     THE PREREQUISITES UNDER THE FAA FOR ENFORCEMENT OF ARBITRATION AGREEMENT ARE SATISFIED.

An arbitration agreement is enforceable under the FAA if the following requirements are met: (1) the existence of a written agreement to arbitrate claims, (2) a nexus to interstate commerce, and (3) coverage of the claims by the arbitration clause. 9 U.S.C. § 2; *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Each of these elements is satisfied here.

### 1.     Plaintiff is Bound by a Valid, Written Arbitration Agreement.

Plaintiff is bound by the Arbitration Provision, which is a part of the written Agreement that governs her Account at issue. (*See* Agreement, Ex. 1 to Dent Dec.) In contesting arbitration, Plaintiff bears the burden of proving that the Arbitration Provision is somehow invalid. *Spinetti v. Service Corp. Int'l*, 324 F.3d 212, 216-17 (3d Cir. 2003); *Grimm v. First Nat'l Bank of Penn.*, 578 F. Supp. 2d 785, 794 (W.D. Pa. 2008); *Gedid v. Huntingdon Nat'l Bank*, 2012 WL 691637, at *6 (W.D. Pa. Feb. 10, 2012).

The Arbitration Provision is set off by bold, capital letters alerting the card holder to the provision and its consequences in multiple places in the card agreement. (*See* Agreement, Ex. 1 to Dent Declaration.) Plaintiff was presented with a copy of the Agreement when she accepted the offer to use the card via the internet. (*See* Dent Dec. ¶ 6.) The Agreement specifies that it

will be accepted if she submits an application to obtain credit or uses the card.  (*See* Agreement Ex. 1 to Dent Dec., p. 2.)  The Agreement also provides specific procedures for rejecting or opting-out of the arbitration clause, which would still allow Plaintiff to use the account.  (*See* Dent Dec. ¶ 10-11; Agreement, Ex. 1 to Dent Dec., p. 2.)  Plaintiff made purchases using the Account and never opted out of the Arbitration Provision.  (*See* Dent Dec.  ¶¶ 8-11.)

State law applies in determining whether a binding agreement to arbitrate exists.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  The Agreement contains a choice of law clause providing for the application of "DELAWARE AND APPLICABLE FEDERAL LAW."  (*See* Agreement, Ex. 1 to Dent Dec., p. 2.)   Where, as here, the governing contract contains a choice-of-law clause, Pennsylvania courts generally honor such an agreement.  *Gay v. CreditInform*, 511 F.3d 369, 388-90 (3d Cir. 2007).

Under Delaware law, use of a credit card will bind the card holder to a card agreement governing the credit card account.  *See Passmore v. Discover Bank*, No. 1:11-CV-01347, 2011 WL 5086431, at *6 (N.D. Ohio Oct. 26, 2011) (holding that, under Delaware law, the plaintiff "unequivocally manifested acceptance" of the card agreement governing the account by making purchases on the account).  Indeed, courts to consider the question have consistently held that a credit card customer becomes bound by a card holder agreement which is provided to the customer if the customer subsequently uses the credit card.  *Whitman v. Capital One Bank (USA), N.A.*, No. WMN–09–1737, 2009 WL 4018523, at *2 (D. Md. Nov. 19, 2009) (collecting cases); *see Gedid*, 2012 WL 691637, at *5-7 (plaintiff was bound by arbitration agreement based on mailbox rule; alternatively, plaintiff estopped from avoiding arbitration agreement where plaintiff knew of the account and used the ATM card).

Therefore, a valid and written agreement to arbitrate Plaintiff's claims exists regarding her Account. Because Plaintiff did not opt-out of arbitration, she is bound by the Arbitration Provision.

**2.     The Parties' Transaction Involved and/or Affected Interstate Commerce.**

The parties' financing transaction involved interstate commerce, thus satisfying the second prerequisite to enforcement of the Arbitration Provision. The Supreme Court has instructed that the term "involving commerce" in the FAA is to be read broadly. *Allied Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-74 (1995). Indeed, the term "involving commerce" in the FAA has been interpreted as the functional equivalent of the more familiar term "affecting commerce" and "encompasses a wider range of transactions than those actually 'in commerce' -- that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Citizens Bank*, 539 U.S. at 56-57.

The transactions at issue in this case meet the FAA's "commerce" requirement. Plaintiff resides in Pennsylvania, whereas Comenity is a bank chartered under the laws of Delaware with its headquarters in Wilmington, Delaware. (Dent Dec., ¶ 4.) Plaintiff's use of her credit card involved wire and electronic communications across state lines. (*Id.* ¶ 8.) These facts indisputably establish "commerce" within the meaning of section 2 of the FAA. *See Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 364 n. 4 (E.D. Pa. 2003).

Furthermore, when a contract expressly provides that the transaction involves interstate commerce within the meaning of the FAA, ***a court will and must enforce the stipulation and***

*apply the FAA to the arbitration agreement contained in the contract*.  *Staples v. Money Tree, Inc.*, 936 F. Supp. 856, 858 (M.D. Ala. 1996); *see also Guffy v. Toll Bros. Real Estate, Inc.*, No. M2003-01810-COA-R3-CV, 2004 WL 2412627, at *3 (Tenn. Ct. App. 2004) (court may find that FAA governs an agreement when "the parties consented in the agreement that the FAA would apply").  The U.S. Supreme Court recently addressed the interpretation of arbitration agreements, stating that courts "must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740, 1745-46 (2011) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989)) (internal citations omitted).  Thus, when interpreting an arbitration agreement, courts must recognize that parties are permitted to negotiate their own terms because of the "fundamental principle that arbitration is a matter of contract."  *Concepcion*, 131 S. Ct. at 1745. Here, the parties expressly agreed that "[t]his Arbitration Provision involves interstate commerce and is governed by the Federal Arbitration Act" and that "[t]he arbitrator must apply applicable substantive law consistent with the FAA . . . ."  (Agreement, Ex. 1 to Dent Dec.) Whether by the agreed-upon choice that the FAA shall apply, or by the fact that the transaction involves interstate commerce, there can be no doubt that the FAA applies to this matter.  Therefore, the second prerequisite to enforcement of the parties' Arbitration Provision is met.

### 3. The Broad Language in the Parties' Arbitration Provision Covers the Claims in this Action.

#### a. Plaintiffs' claims fall within the definition of "covered claims."

The Arbitration Provision is unquestionably broad enough in scope to encompass the claims in this action.  When determining the scope of an arbitration provision, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the

arbitration clause itself resolved in favor of arbitration." *Volt Info.*, 489 U.S. at 476; *Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003) (explaining that under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," especially when the arbitration clause is broad).

The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960)); *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) (quoting *AT&T Techs., Inc.*).

In construing arbitration clauses, courts have distinguished between "broad" clauses that purport to cover all disputes "arising out of" or "relating to" a contract, and "narrow" clauses that limit arbitration to specific types of disputes.  *See, e.g., Battaglia*, 233 F.3d at 727 ("[W]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction."); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (distinguishing between broad and narrow clauses). If a court concludes that the arbitration provision before it is a "broad" one, then the presumption in favor of arbitrability applies with even greater force.  *See AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).  Contracts requiring arbitration of "any controversy arising out of or relating to" an agreement or account are considered "broad" in scope.  *See The Renfrew Centers, Inc. v. UNI/CARE Systems*, 920 F. Supp. 2d 572, 574 (E.D. Pa. 2013) (collecting Third Circuit cases and noting that language requiring arbitration of "any controversy or claim 'arising out of' or 'related to' the agreement" is a "quintessential" broad

arbitration agreement); *see also Whaley v. T-Mobile, USA, Inc.*, No. 13–31–DLB–JGW, 2013 WL 5155342, at *2 (E.D. Ky. Sept. 12, 2013) (collecting cases).   Where the arbitration agreement is broad in scope, only an "express provision excluding a particular grievance" or "the most forceful evidence of a purpose to exclude the claim from arbitration" will remove the dispute from consideration by the arbitrators.  *AT&T Techs., Inc.*, 475 U.S. at 650.

The Arbitration Provision defines a "claim" as "any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement [or] the Account," and specifically includes disputes based on "consumer rights," "statute," and "regulation." (Agreement, Ex. 1 to Dent Dec.)  Because it includes "any claim, dispute or controversy" that "in any way arises from or relates to . . . the Account,"  the clause is considered broad in scope, and Plaintiff can only avoid arbitration of her claims by showing "forceful evidence" that her dispute was not intended to be arbitrated under the agreement.  *See AT&T Techs., Inc.*, 475 U.S. at 650; *Lukens Steel Co. v. United Steelworkers of Am.*, 989 F.2d 668, 673 (3d Cir. 1993).  Plaintiff's claim under the TCPA falls squarely within the provision, which specifically covers claims based on "consumer rights" and "statute."  Because Plaintiff's TCPA claim is not expressly excluded, and there is no evidence it was meant to be excluded, Plaintiff's claims must be compelled to arbitration.

### b.       The scope of the Arbitration Provision is for the arbitrator to decide.

As shown, a valid arbitration agreement exists between the parties and Plaintiff's claims fall squarely within the Arbitration Provision's definition of "Covered Claims."  However, to the extent any question remains about whether Plaintiff's claims are subject to arbitration, this determination should be reserved for the arbitrator.  The Arbitration Provision makes clear that the question of arbitrability is itself subject to arbitration, including within its scope "any dispute

or argument that concerns the validity or enforceability of the Agreement." (Agreement, Ex. 1 to

Dent Dec., p.2.)  The agreement also provides that the administrator of the arbitration proceeding

shall be either the American Arbitration Association ("AAA") or JAMS, both of which require

the Arbitrator to decide the issue of arbitrability of claims.  (*Id.*)

Agreements such as this authorize the arbitrator to decide issues of arbitrability based on

the arbitration forum's governing arbitration rules and have routinely been upheld by state and

federal courts under the doctrine announced in *First Options, Inc. v. Kaplan*, 514 U.S. 938

(1995).  There, the Supreme Court explained that

> [j]ust as the arbitrability of the merits of a dispute depends upon whether the
> parties agreed to arbitrate that dispute, *see, e.g., Mastrobuono v. Shearson
> Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S. Ct. 1212, 1216, 131 L. Ed. 2d 76
> (1995); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,
> 626, 105 S. Ct. 3346, 3353, 87 L. Ed. 2d 444 (1985), so the question 'who has the
> primary power to decide arbitrability' turns upon what the parties agreed about
> ***that*** matter.

*First Options, Inc.*, 514 U.S. at 943 (emphasis in original).  This principle flows inexorably

"from the fact that arbitration is simply a matter of contract between the parties."  *Id.* at 943.

Thus, the Court held that where parties clearly agree to arbitrate issues of arbitrability, such

issues should be reserved for the arbitrator.  *See id.*

The law is clear that parties may bar courts from deciding the question of whether a

dispute is arbitrable by clearly and unmistakably contracting for an arbitrator to determine

arbitrability.  *See Kaplan*, 514 U.S. at 938.  When parties explicitly incorporate rules that

empower an arbitrator to decide issues of arbitrability, such as the arbitral forum's rules, the

incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such

issues to an arbitrator.  *See, e.g., Oracle America, Inc. v. Myriad Group A.G.*, 724 F.3d 1069,

1074 (9th Cir. 2013); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (collecting cases).

Here, the subject Arbitration Provision permits the choice of either the AAA or JAMS and their associated rules for any arbitration between the parties.  The applicable AAA rules for consumer disputes provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *See* Am. Arbitration Assn. Consumer Arbitration Rules, www.adr.org, Rule R-14.  (A true and correct copy of Rule R-14 is attached hereto as Ex. B.)  The applicable JAMS rule likewise provides that "[t]he Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter," including "disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought."  JAMS Comprehensive Arbitration Rules & Procedures, www.jamsadr.com, Rule 11(b).  (A true and correct copy of Rule 11 is attached hereto as Ex. C.)

By specifically agreeing to conduct any arbitration using AAA or JAMS, the parties left no doubt whatsoever that the arbitrator alone should have the power to rule on the arbitrability of the claims in this case.  *See Petrofac*, 687 F.3d at 675; *see also* AAA Rule R-7(a); JAMS Comprehensive Arb. Rule 11(b).  Plaintiff cannot evade the consequences flowing from the incorporation of these administrators into her Agreement, which were clearly disclosed in the Arbitration Provision.  Accordingly, all of the prerequisites under the FAA for enforcement of an arbitration agreement are satisfied in this case.  For these reasons, Comenity's Motion to Compel Arbitration should be granted, and any issues relating to the arbitrability of claims should be reserved for the Arbitrator.  *See Destinations by Design, LLC v. T-Mobile USA, Inc.*, No. 2:09-

CV-1099, 2010 WL 1687752, at *4 (S.D. Ohio Apr. 26, 2010) ("Because the arbitration provision expressly states the parties agree to arbitrate arbitrability, the Court leaves the final determination regarding arbitrability to the JAMS arbitrator.").

### C.      PLAINTIFF'S CLAIMS SHOULD BE DISMISSED.

This Court should not only compel the arbitration of Plaintiff's claims, but it should also dismiss this case.  Section 3 of the FAA addresses the procedure for handling cases where issues are referable to arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Federal courts in Pennsylvania have recognized that where all of the claims are subject to arbitration, dismissal is appropriate.  *E.g., Masoner v. Education Mgmt. Corp.*, 18 F. Supp. 3d 652, 662 (W.D. Pa. 2014) (dismissing complaint with prejudice in favor of arbitration); *Montgomery v. Decision One Fin. Network Inc.*, 2005 WL 475427, at *3 (E.D. Pa. Mar. 1, 2005) (same).   The reason for this is simple—when all claims must be submitted to arbitration, "retaining jurisdiction would serve no purpose."  *Smith v. The Equitable*, 27 F. Supp. 2d 565, 569 (E.D. Pa. 1998).  The Third Circuit has approved of this practice, noting that it is appropriate to dismiss the action when all of plaintiff's claims are referred to arbitration.  *See, e.g., Blair v. Scott Specialty Gases*, 283 F.3d 595, 600 (3d Cir. 2002) ("[T]he district court's decision to dismiss the proceedings rather than stay the proceedings . . . was appropriate for reasons of judicial efficiency when all the claims involved in an action are arbitrable.").

The Complaint alleges violations of the TCPA, all falling within the broad definition of the "claims" covered by the Arbitration Provision, leaving no claims to be decided by this Court. For these reasons, if this Court enters an order compelling arbitration, the Court should also dismiss this case in its entirety.

## III. CONCLUSION

Plaintiff should be compelled to arbitrate all of her claims.  There is a valid, written arbitration provision that covers her claims against Comenity; the credit transaction clearly involved interstate commerce; and the Arbitration Provision is unquestionably broad enough in scope to encompass the claims in this action.

**WHEREFORE**, premises considered, Comenity respectfully requests that this Court grant its Motion to Compel Arbitration and Dismiss Plaintiff's Claims, compel individual arbitration of the claims in this matter and dismiss the instant case.

Dated:  October 13, 2015

Respectfully submitted,

*/s/Zachary D. Miller*_____
Zachary D. Miller (*admitted pro hac vice*)
(TN BAR # 032674)
J. Christopher Suedekum (*admitted pro hac vice*)
(VA BAR # 80984)
Burr & Forman LLP
511 Union Street, Suite 2300
Nashville, Tennessee 37219
Telephone:  (615) 724-3216
Facsimile:  (615) 724-3316
zmiller@burr.com
csuedekum@burr.com

Attorney for Defendant
COMENITY BANK

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax or email on this the 13th day of October, 2015:

Craig T. Kimmel
Kimmel & Silverman, P.C.
30 East Butler Pike
Ambler, PA 19002
kimmel@creditlaw.com


*/s/Zachary D. Miller*
OF COUNSEL

25340476 v1                                                    15